UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WAI LUN CHUI,

                Plaintiff,

-against-

PUBLICIS GROUPE S.A., LION RESOURCES INC, MMS USA HOLDINGS, INC. and EPSILON DATA MANAGEMENT LLC,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/23/2025__

24 Civ. 6767 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Wai Lun Chui, brings this action against Defendants, Publicis Groupe S.A. ("Publicis"), Lion Resources Inc. ("Lion"), MMS USA Holdings, Inc. ("MMS"), and Epsilon Data Management LLC ("Epsilon"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, discrimination on the basis of race, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and retaliation in violation of Title VII, the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6(h).[1] *See generally* Compl., ECF No. 1. Before the Court is Defendants' motion to dismiss. ECF No. 25; *see also* Mem., ECF No. 26; Opp., ECF No. 33; Reply, ECF No. 34. For the reasons stated below, the motion is GRANTED.

---

[1] The first paragraph of the complaint states that Chui also brings causes of action for "breach of contract" "and "intentional misrepresentation." Compl. ¶ 1. Those causes of action, however, are not listed under the complaint's "Causes of Action" section, there are no factual allegations in the complaint to suggest that Chui is pursuing them, and he does not address them in his opposition to Defendants' motion to dismiss. *See id.* ¶¶ 11–18; *see generally* Opp., ECF No. 33. Accordingly, the Court does not consider those claims.

## BACKGROUND

I. <u>Factual Background</u>[2]

Publicis is a "global marketing and public relations conglomerate headquartered in Paris, France." Compl. ¶ 4. Lion and MMS are "wholly owned" by Publicis. *Id.* ¶ 6. Chui worked for Publicis "and its subsidiaries" as an "Information Security Manager" from August 8, 2016, to May 20, 2021. *Id.* ¶ 3. In 2019, Publicis acquired Epsilon, which is now a subsidiary of Publicis. *See id.* ¶¶ 2, 5, 16. On January 19, 2021, Epsilon entered into a deferred prosecution agreement with the Department of Justice concerning a "conspiracy to commit mail and wire fraud related to elder fraud schemes." *Id.* ¶ 5.

Chui states that he is a "Chinese Jewish Asian American" and was "over 40" years old and "the oldest in his work group" when he was fired. *Id.* ¶¶ 1, 11–12. He alleges that he "consistently received positive performance reviews and bonuses during his employment" at Publicis and had "exemplary work performance and evaluation [*sic*]." *Id.* ¶¶ 9, 12. According to Chui, he "was terminated because of his higher age in order to achieve cost savings." *Id.* ¶ 13.

He further claims that he discussed with Defendants his "concern relating to the acquisition of . . . Epsilon . . . , in particular that . . . Epsilon had entered into a Department of Justice [d]eferred [p]rosecution [a]greement." *Id.* ¶ 16. Afterwards, he "worked with Epsilon's personnel in which had to present work regarding Epsilon which were misrepresented and possible fraud [*sic*]." *Id.* ¶ 17. He claims that he was fired "for raising concerns about workplace misconduct, including violations related to Epsilon's" deferred prosecution agreement. *Id.* ¶ 18.

---

[2] The following facts are taken from the complaint, which the Court must accept as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Finally, Chui alleges that "Defendants discriminated against [him] based on his national origin, race, and color as a Chinese Jewish Asian American, creating a hostile work environment." *Id.* ¶ 14.  He states that Defendants "required [him] to continue working through the Sabbath" despite knowing that he "is a practitioner of the Orthodox Jewish law observing the Sabbath law." *Id.* ¶ 15.

II. Procedural History

Chui filed a discrimination charge (the "EEOC Charge") against Publicis with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2024.  EEOC Charge, ECF No. 22-1.  By letter dated June 6, 2024 (the "Right-to-Sue Letter"), the EEOC informed Chui that his charge was being dismissed because it "was not filed within the time limits under the law," and if he wishes to file a lawsuit against the respondent listed in the charge, he must do so "WITHIN 90 DAYS of [his] receipt of th[e] notice."  Right-to-Sue Letter, ECF No. 22-2 at 1 (capitalization in original).[3]  On September 6, 2024, Chui filed this action.  *See* Compl.

## DISCUSSION

I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed when it is apparent that the Court lacks subject matter jurisdiction—that is, the statutory or constitutional power to adjudicate the claim.  *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

---

[3] Although Chui's EEOC Charge and Right-to-Sue Letter are not mentioned in the complaint, the Court may take judicial notice of them without converting Defendants' motion into a motion for summary judgment because they are public records.  *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006).

3

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss under Rule 12(b)(1), the Court must draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II.  Application

    A.  Administrative Exhaustion

        1.  SOX

To bring a retaliation claim under SOX, a plaintiff must first file a claim with the Occupational Safety and Health Administration ("OSHA") within 180 days of the alleged retaliatory action, or when the claimant first became aware of the action. 18 U.S.C. § 1514A(b); *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019). The "administrative exhaustion requirements under SOX are jurisdictional and a prerequisite to suit in federal court." *Daly*, 939 F.3d at 428. Here, Chui does not allege that he filed a claim before OSHA—let alone, a claim within 180 days of any alleged retaliatory action. *See generally* Compl. Defendants argue that Chui's SOX claim is, therefore, time-barred and the Court lacks jurisdiction to review it. Mem.

4

at 9. Chui does not contest that he failed to exhaust administrative remedies; he argues only that the exhaustion requirement under SOX "should . . . be treated as non-jurisdictional." Opp. at 8. That argument, however, is squarely foreclosed by Second Circuit caselaw. *See Daly*, 939 F.3d at 428.

Because Chui "did not file a timely complaint with OSHA," he is "precluded from filing [his] claim in federal district court," and the Court "lack[s] subject matter jurisdiction over [the] claim." *Id.* at 429. Accordingly, Defendants' motion to dismiss Chui's SOX claim under Rule 12(b)(1) is granted.

2. ADEA and Title VII

To bring claims under either the ADEA or Title VII, a plaintiff must exhaust administrative remedies in accordance with EEOC regulations.[4] 29 U.S.C. §§ 626(d), 633(b); 42 U.S.C. § 2000e-5(e). To do so, the plaintiff must timely file a discrimination charge with the EEOC and timely file a complaint in district court after receiving a right-to-sue letter from the EEOC. *Vega v. Fed. Exp. Corp.*, No. 09 Civ 7637, 2011 WL 4494751, at *5 (S.D.N.Y. Sept. 29, 2011).[5] If the plaintiff fails to file his EEOC charge within 300 days of the last alleged unlawful employment action, or if he fails to file his lawsuit within 90 days of receiving a right-to-sue letter, his lawsuit may be dismissed. *See* 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f); *e.g.*, *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133–35 (2d Cir. 2003).

---

[4] Although "an aggrieved employee may proceed directly to federal court on an ADEA claim, he becomes obligated to exhaust his administrative remedies once he decides to commence proceedings with the EEOC." *Vega v. Fed. Exp. Corp.*, No. 09 Civ 7637, 2011 WL 4494751, at *5 n.2 (S.D.N.Y. Sept. 29, 2011).

[5] "Unlike Title VII claims, ADEA claims can be filed in federal court without waiting for a right-to-sue letter from the EEOC as long as they have been filed with the EEOC for at least sixty days. However, in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant *must* file in a federal court within 90 days of receipt of the letter to exhaust his administrative remedies." *Id.* at *5 (citing *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 563 (2d Cir. 2006)).

Defendants argue that Chui's ADEA and Title VII claims should be dismissed because his EEOC charge, filed more than 300 days after he was fired, and his complaint, filed more than 90 days after he received his right-to-sue letter, were both untimely. Mem. at 6–7. Chui does not argue otherwise. Instead, his counsel "request[s] leniency" because of "the volume of [his] caseload" and because he is "the only litigation attorney" at a "small firm." Opp. at 2. Unlike SOX's exhaustion requirement, the administrative exhaustion requirements under Title VII and the ADEA are not jurisdictional and are both, therefore, "subject to equitable defenses." *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489–90 (2d Cir. 2018) (citation omitted); *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013).

Equitable tolling of the administrative exhaustion requirement under Title VII and the ADEA is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up) (citations omitted). To justify equitable tolling, the plaintiff must demonstrate that he has "acted with reasonable diligence during the time period []he seeks to have tolled," and has shown "extraordinary" circumstances to explain the delay. *Id.* at 80–81 (citation omitted). Courts have generally tolled administrative exhaustion requirements where (1) "the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," (2) the "plaintiff as unaware of his or her cause of action due to misleading conduct of the defendant," or (3) the "plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Id.* at 80 (citations omitted).

Chui does not argue that any of these circumstances apply. His counsel merely notes that he has a high "caseload" and works at a "small firm," and he urges the Court to decide the case on its merits, "not technicalities." Opp. at 2, 4. However, the "inadvertence of [a party's]

attorney," by itself, does not ordinarily constitute good cause for failure to meet a deadline. *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003); *cf. LaNasa v. Stiene*, 731 F. Supp. 3d 403, 415 (E.D.N.Y. 2024) ("Though a court must excuse a plaintiff's failure to timely serve a defendant for good cause, a mistake by an attorney is not good cause." (citations omitted)). Moreover, Chui's lawyer does not explain what prevented Chui from timely filing the EEOC Charge or the complaint in this case, nor does he demonstrate how he or Chui "acted with reasonable diligence during the time period []he seeks to have tolled." *Zerilli-Edelglass*, 333 F.3d at 80 (citation omitted).

In sum, Chui has not met his burden to demonstrate that equitable tolling of the administrative exhaustion requirements is warranted, and his ADEA and Title VII claims may be dismissed on that basis alone. Even if Chui's claims were timely, his Title VII and ADEA causes of action would be dismissed for failure to state a claim for the reasons explained below.

### B. Merits

#### 1. ADEA

"To survive a motion to dismiss an age discrimination claim brought under the ADEA[,] . . . a plaintiff must plausibly allege that [he] is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 484–85 (S.D.N.Y. 2017) (citation omitted). With respect to the third prong, "it is not sufficient for a plaintiff to show that age was simply a motivating factor in the employer's adverse action." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (citation omitted). Rather, the plaintiff must allege that "age was the reason that the employer

decided to act." *Id.* (citation omitted). This "but-for causation standard . . . applies not only at trial but at the pleading stage as well." *Id.*

Defendants argue that Chui's ADEA claim should be dismissed because has not "plead[ed] any fact to support an inference of [age] discrimination." Mem. at 10. The Court agrees. Chui alleges that he was terminated "to achieve cost savings," but he does not allege any factual basis for his knowledge that he was terminated on that ground, nor any facts that would support the inference that the supposed need for cost savings was tied to his age. Compl. ¶ 13. Nor does he allege, for example, that anyone at any of the Defendant companies criticized his performance in age-discriminatory terms, gave more favorable treatment to similarly situated younger employees, or replaced him with a younger employee after he was fired. *See Littlejohn v. City of New York*, 795 F.3d 297, 312–13 (2d Cir. 2015). Chui does allege that Epsilon may have engaged in an elder fraud conspiracy and that he was fired for complaining to Publicis' management about Epsilon's conduct. Compl. ¶ 5, 18. But, again, these facts do not plausibly suggest that "age was the reason" Publicis fired him.[6] *Lively*, 6 F.4th at 303 (citation omitted).

Taken as a whole, Chui's complaint lacks sufficient factual detail to provide even minimal support for the proposition that Publicis fired him because of his age. Defendants' motion to dismiss his ADEA claim is, therefore, granted.

---

[6] Chui also claims that he was terminated "due to wrongful actions by the Defendants, including breaches of [Publicis'] Janus Global Service Level Agreement" and "violations of the Employee Handbook." Compl. ¶ 10. Without further factual detail, it is unclear what legal claims this allegation supports. The complaint does not explain what the "Janus Global Service Level Agreement is," whom it binds, what provisions of which defendant's "Employee Handbook" were violated, or what conduct by what actors violated those provisions. Accordingly, although the Court credits the allegation as true as it must on a motion to dismiss, the allegation does not bear on the Court's analysis.

2. Title VII

A claim of discrimination on the basis of race, national origin, or religion brought under Title VII will survive a motion to dismiss if a plaintiff plausibly alleges facts sufficient to support that he "is a member of a protected class, was qualified [for the job], suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically [or religiously] degrading terms; or its invidious comments about others in the employee's protected group." *Id.* at 312. "In the absence of [such] direct evidence of discriminatory intent, a plaintiff may also raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230–31 (S.D.N.Y. 2022) (citation omitted); *see Littlejohn*, 795 F.3d at 312–13. Alternatively, "[t]he fact that a plaintiff was replaced by someone outside [her] protected class will ordinarily suffice for the required inference of discrimination . . . at the pleading stage." *Littlejohn*, 795 F.3d at 313. A plaintiff may also state a claim of religious discrimination under Title VII by plausibly alleging that he requested, and the employer failed to make, reasonable accommodations for the employee's religious observance or practice that would not have caused undue hardship on the employer's business. *See Goldschmidt v. N.Y. State Affordable Hous. Corp.*, 380 F. Supp. 2d 303, 310 (S.D.N.Y. 2005); *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).

Like his claim under the ADEA, Chui's race, national origin, and religious discrimination claims suffer from a fatal lack of supporting facts. With respect to religious discrimination, Chui alleges only that he is Jewish, observes the Sabbath, and that Defendants "required" him to

9

"continue working through the Sabbath."  Compl. ¶¶ 1, 15.  Such allegations, without more, do not "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311; *cf., e.g.*, *Livingston v. City of New York*, 563 F. Supp. 3d 201, 220–22 (S.D.N.Y. 2021) (plaintiff failed to establish religious discrimination claim where plaintiff did not introduce any evidence that he had requested and been denied an accommodation to avoid working on the Sabbath).  Chui does not explain, for example, when the alleged conduct occurred; how often it occurred; how it was that Defendants "required" him to continue working on the Sabbath; whether he requested any accommodation from Defendants that was denied; or any facts sufficient to suggest that his religious faith or practices played any role in Defendants' decision to fire him.

Chui's race and national origin claims are supported by even less factual detail.  He alleges only that "Defendants discriminated against [him] based on his national origin, race, and color as a Chinese Jewish Asian American, creating a hostile work environment." *Id.* ¶ 14.  To survive a motion to dismiss, a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).  Chui's single, conclusory allegation related to race and national origin discrimination, "devoid of further factual enhancement," *id.* (citation omitted), does not suffice to satisfy his "minimal burden to show discriminatory intent" under Title VII, *Littlejohn*, 795 F.3d at 311.

Accordingly, Defendants' motion to dismiss Chui's Title VII claims is granted.

10

3. Dodd-Frank

Dodd-Frank prohibits employers from retaliating against a "whistleblower," which is defined within the statute as a person who provides "information relating to a violation of the securities laws to the [Securities and Exchange] Commission [("SEC")]." 15 U.S.C. § 78u-6(a)(6). Defendants argue that Chui has failed to state a claim under Dodd-Frank, among other reasons, because he does not allege that he provided any information about a securities law violation to the SEC prior to any alleged retaliatory act. Mem. at 9–10. Chui does not dispute that the complaint lacks allegations related to making a report or providing information to the SEC. See Opp. at 10. Instead, he argues that Dodd-Frank should be read to protect employees who report suspected fraud internally. Id. In *Digital Realty Trust, Inc. v. Somers*, the Supreme Court foreclosed that argument, holding that "[t]o sue under Dodd-Frank's anti-retaliation provision, a person must first provide information relating to a violation of the securities laws to the Commission," *i.e.*, the SEC. 583 U.S. 149, 153 (2018); *see id.* at 158–59 (rejecting the view that "a report to a company supervisor would qualify"). Because Chui does not allege that he "provide[d] information 'to the Commission' before his termination," he has not pleaded that he qualified as a "whistleblower" at the time of Defendants' alleged retaliation. *Id.* at 163. "He is therefore ineligible to seek relief under § 78u-6(h)." *Id.* Accordingly, Defendants' motion to dismiss Chui's retaliation claim under Dodd-Frank is granted.

C. Leave to Amend

Defendants urge the Court to dismiss Chui's claims with prejudice and without leave to amend. Mem. at 14. They argue that Chui had an opportunity to seek leave to amend the complaint after receiving Defendants' first and second pre-motion letters but declined to do so— and even failed to respond to the letters as required by the Court's Individual Practices in Civil

Cases. *Id.* at 15.  They also argue that any amendment to the complaint would be futile because "[t]here is no indication or representation that [Chui] ever raised any concern to the SEC to qualify as a whistleblower under Dodd-Frank," and "[t]here is no way for [Chui] to escape his failure to satisfy administrative exhaustion requirements for his Title VII, ADEA, and Sox claims." *Id.* at 14–15.

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend] when justice so requires."  "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  Chui has not yet moved for leave to amend his complaint, and he should be afforded the opportunity to do so with "the benefit of th[is]. . . [C]ourt's reasoning in dismissing the complaint."  *See Wickland v. City of New York*, No. 22 Civ. 1554, 2024 WL 4355046, at *13 (S.D.N.Y. Sept. 30, 2024) (citation omitted).

Accordingly, the Court's dismissal of Chui's claims will operate without prejudice.  By **October 23, 2025,** Chui may move for leave to amend the complaint.  Should he do so, his motion shall be accompanied by a proposed amended complaint in redline format showing changes from the original complaint, and his motion shall explain how the proposed complaint would cure the deficiencies described in this order and Defendants' motion papers.  In the event

12

Chui does not timely seek leave to amend his complaint or the Court denies any such request, its dismissal of his claims shall be with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 25.

SO ORDERED.

Dated: September 23, 2025
      New York, New York

_____
ANALISA TORRES
United States District Judge